J-S04002-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: M.G.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: J.N.L., MOTHER | : | |
| | : | No. 2687 EDA 2019 |

Appeal from the Order Entered August 15, 2019
In the Court of Common Pleas of Montgomery County Orphans' Court at
No(s):  No. 2018-A0023

BEFORE:  BENDER, P.J.E., STABILE, J., and MURRAY, J.

MEMORANDUM BY BENDER, P.J.E.:                  Filed: April 15, 2020

J.N.L. (Mother) appeals from the decree entered on August 15, 2019, that granted the petition filed by the Montgomery County Office of Children and Youth (OCY or Agency) seeking the involuntary termination of Mother's parental rights to M.G.B. (Child), born in June of 2016.  We affirm.

Child was born prematurely at 23 weeks and suffered from neonatal complications.  She spent the first six months of her life hospitalized in Kansas, where she was born, and remains medically fragile.  In May of 2017, when the Child was ten months old, Mother took Child to Pennsylvania to visit family.  OCY first became involved with the family on May 21, 2017, when Child was hospitalized for acute alcohol poisoning after Mother mixed vodka instead of water with formula and fed it to Child through her G-tube.  OCY obtained custody of Child on June 13, 2017, when she was released from the hospital, and placed her in the care of her pre-adoptive foster mother at that time.

Mother was incarcerated from June 2017 through December 2017 on charges related to the vodka incident.

On May 3, 2019, the Agency filed its petition for termination of Mother's parental rights and alleged grounds under 23 Pa.C.S. § 2511(a)(2), (8), (9) and (b). The trial court provided a further review of the factual and procedural history of this case and its reasoning for terminating Mother's parental rights by attaching the notes of testimony from the August 14, 2019 hearing to its Pa.R.A.P. 1925(a) opinion.[1] Specifically, the court determined that the Agency had proven that Mother's parental rights should be terminated pursuant to sections (a)(2), (8), (9) and (b). With regard to subsection (a)(2), the court explained:

> [T]here have been … three periods of time with respect to … [M]other. Initially, after … [C]hild was in placement, …[M]other was incarcerated on the charges related to providing vodka to … [C]hild and injuring … [C]hild. … [M]other was incarcerated until December of 2017.
>
> Thereafter, between December [2017] and approximately April of 201[8], the [A]gency was concerned about the existing court orders that ordered no contact with … [C]hild and was constrained from providing visits and actively working towards reunification with … [C]hild and was in a bit of a quandary, as the statute both encouraged them to provide reunification efforts, but the court orders restricted them from providing visits.
>
> But beginning after April of 2018, the [A]gency did work actively with … [M]other toward reunification, and Ms. Spano[, an OCY caseworker,] testified candidly that … [M]other made

---

[1] At the same hearing, J.B.'s (Father) parental rights to Child were also terminated. Father filed a separate appeal with this Court, which is addressed in a separate memorandum at No. 2688 EDA 2019.

progress and that the quality of the visits with … [C]hild were good, that … [M]other loves … [C]hild and had more than satisfactory visits with … [C]hild when she had visits….

[B]efore January of [20]19, the visits became unsupervised with [M]other, and she had a period of time where she had unsupervised visits…. [V]isits prior to March had been unsupervised. But … in February of 2019, ... [M]other became the subject of a protection from abuse order brought by [Mother's paramour,] Mr. [J.] … [Mother] acknowledged in her testimony [that] there were several interactions with the police related to domestic altercations between herself and Mr. [J.] prior to the protection from abuse order being obtained, and in the context of the protection from abuse order, she was evicted from the residence she shared with Mr. [J.]. That event caused her [to] no longer … have a place where she could have visits at her home, the home she shared with a friend for a while. The friend did not wish to have background checks conducted by the [OCY]. So that home could not be qualified as a place for unsupervised visits.

Consequently, in February of 2019, only one visit occurred of four offered, it appears. The first visit, in March of 2019, was also canceled as there was no place to have the visit. And in early March of 2019, a plan was made to resume visits at the [foster agency,] The Village.

Thereafter, from March 26th of 2019 through July 30th of 2019, weekly visits were offered. Nineteen weekly visits were offered, of which [M]other attended seven. Four visits were canceled or not confirmed by … [M]other. Five visits were confirmed but [M]other failed to show. And three additional visits that [M]other attended, she was significantly late, as much as forty-five minutes or one and a half hours late. So her attendance between March of 2019 and July of 2019 is of great concern to the [c]ourt[.] … [A]lthough she testified that she had trouble with transportation and issues with jobs[,] and on some occasions she told [her] caseworker of issues like that and on one occasion she wasn't feeling well, nevertheless, the failure to attend so many offered visits in that period gives [this court] great concern as to whether [M]other has a capacity to meet …[C]hild's needs on a regular ongoing basis, on a 24/7 basis.

Unfortunately, [M]other never progressed to the unsupervised overnight visits that were contemplated by [OCY], and [OCY] cannot establish that she has that capacity.

Furthermore, it was established in the testimony … that … [M]other was not candid with her evaluators about her history of drug use, which she acknowledged she was not candid [about], and while she was having in-home services for the period between December of 2017 and February of 2019 that helped her both with her drug and alcohol issues and stability, after February of 2019[,] she has not continued to have mental health support or drug and alcohol support. This raises additional concerns that are consistent with the concerns raised by her failure to be able to continue to make visits on a regular basis, on a weekly basis with … [C]hild.

[Mother is] optimistic that she has a job beginning in September, but her testimony was a bit evasive and less than candid about her employment and her ability to continue to afford the apartment where she's living. And her testimony – some of her testimony was contradicted by Mr. [J.]. And [this court] find[s] Mr. [J.], who is an unbiased witness and who was called here under subpoena and has no interest in the outcome of this case, was more credible than [Mother's] testimony on the issues where they differed, including on her mental health status in February of 2019 and thereafter.

Given that she was not candid with her mental health and drug and alcohol evaluators and is no longer in treatment, … and has failed to make visits repeatedly and [has] been late for visits repeatedly, and given her lack of candor to the [c]ourt on many issues, [this court] conclude[s] that [OCY] has established by clear and convincing evidence an incapacity to meet … [C]hild's needs that has caused … [C]hild to be without essential parental care, control, or some assistance necessary for her physical and mental well-being.

[This court] also conclude[s] that the conditions that led to the incapacity of … [M]other will not be remedied in a reasonable time frame.

N.T., 8/14/19, at 258-63.

The trial court also explained its reasoning relating to its conclusion that the Agency had proven that subsections (a)(8) and (a)(9) applied. Additionally, the court discussed the facts and reasoning pursuant to section (b), stating:

In this case, the testimony has established that with respect to … [M]other, there is clearly affection and a bond between [Mother] and … [C]hild. However, [Mother] has not lived with … [C]hild for more than a period of approximately four months of … [C]hild's three years – more than three years now. The first six months she was a parent present at the hospital while … [C]hild was being cared for 24/7 in the hospital, but … [C]hild was only in her full-time care for a period of four months, ending with the tragic events that severely injured … [C]hild and resulted in her hospitalization and [M]other's incarceration on very serious charges.

Thereafter, [M]other simply has not made progress sufficient to permit the [A]gency to have confidence in her stability, her employment, her housing stability, … her mental health stability, and her stability regarding drug and alcohol use. All the issues that were from the beginning of the case which [were] the [A]gency's concerns, some of which may have led to the tragic mistake or incident that caused … [C]hild to ingest vodka, continue to be concerns today and have not been adequately resolved.

… [M]other has not provided a home for … [C]hild or provided that stability, love and affection that can give a secure attachment. While there's an attachment and affection, the [c]ourt finds that it has not been established sufficient with the secure attachment.

In the meantime, … [C]hild has been raised in a home that is described as loving and secure where she is bonded and attached.

Under the circumstances of this case, while it's always difficult to terminate the rights of a birth parent who has been involved with … [C]hild and who loves … [C]hild and whom … [C]hild loves, the [c]ourt concludes that under all of the circumstances,

- 5 -

termination of parental rights so … [C]hild may remain secure, safe, and loved in a loving home and achieve permanence will not be detrimental to … [C]hild.

Therefore, from all of the evidence and testimony, [this court] conclude[s] that termination of … [M]other's parental rights best serves the needs and welfare of [Child] and will not irreparably harm her.

*Id.* at 265-67.

On appeal, Mother raises the following issues for our review:

A. Did the trial court commit an error of law and/or abuse its discretion when it held that [the Agency] had proven by "clear and convincing evidence" that [Mother's] parental rights should be terminated pursuant to 23 Pa.C.S. [§] 2511(a)(2) and 23 Pa.C.S. [§] 2511(a)(8) where … [M]other had made, and was making, substantial progress on her Family Services Plan(s) goals as proven by the testimony and evidence produced at the hearing[?]

B. Did the trial court commit an[] error of law and/or abuse its discretion when it terminated [Mother's] parental rights pursuant to 23 Pa.C.S [§] 2511(b) on the basis that the developmental, physical, emotional needs and welfare of … [C]hild [were] best served by termination of … [M]other's rights where she had made, and was making[] substantial progress on the Family Services Plan(s)[?]

Mother's brief at 6.

We review an order terminating parental rights in accordance with the following standard:

When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the

record in order to determine whether the trial court's decision is supported by competent evidence.

*In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009) (quoting *In re S.H.*, 879

A.2d 802, 805 (Pa. Super. 2005)). Moreover, we have explained that:

> The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*Id.* (quoting *In re J.L.C. & J.R.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

The trial court is free to believe all, part, or none of the evidence presented

and is likewise free to make all credibility determinations and resolve conflicts

in the evidence. *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004). If

competent evidence supports the trial court's findings, we will affirm even if

the record could also support the opposite result. *In re Adoption of T.B.B.*,

835 A.2d 387, 394 (Pa. Super. 2003).

We are guided further by the following: Termination of parental rights

is governed by section 2511 of the Adoption Act, which requires a bifurcated

analysis.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between

parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citing 23 Pa.C.S. § 2511, other citations omitted). The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *R.N.J.*, 985 A.2d at 276.

With regard to section 2511(b), we direct our analysis to the facts relating to that section. This Court has explained that:

> Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id.* However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *Id.* at 763.

*In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010).

In this case, the trial court terminated Mother's parental rights pursuant to sections 2511(a)(2), (8), (9) and (b). We need only agree with the trial court as to any one subsection of section 2511(a), as well as section 2511(b), in order to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Here, we analyze the court's decision to terminate under section 2511(a)(2) and (b), which provide as follows:

>**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
>>\*\*\*
>
>>(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
>>\*\*\*
>
>**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2), (b).

We first address whether the trial court abused its discretion by terminating Mother's parental rights pursuant to section 2511(a)(2).

>In order to terminate parental rights pursuant to 23 Pa.C.S.[] § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002) (citations omitted).

Here, in regards to section 2511(a)(2), Mother argues that the trial court abused its discretion in failing to accept her testimony pertaining to the steps she has taken to substantially comply with her Family Service Plan (FSP) goals and regarding her ability to care for the Child moving forward. Mother's brief at 17. Mother claims that she "has taken all steps necessary to be reunited with her child and [to] make herself the best person she can be to care for her child." *Id.* at 18. She avers that she "took parenting classes while in prison, obtained evaluations, counseling and treatment[,] and attended a feeding clinic for the [C]hild…." *Id.* (citations to record omitted). Mother insists that "she can currently care for the [C]hild and has housing, clothes and toys." *Id.* (citations to record omitted). These assertions are insufficient to convince this Court that the trial court erred in ordering the termination of Mother's parental rights.

According to OCY, "Mother has exhibited a repeated and continued incapacity to parent … Child for a period of two years, due to ongoing instability, failure to maintain recommended mental health and substance

abuse treatment, failure to maintain consistent visitation with … Child[,] and failure to demonstrate an ability to meet … Child's needs."  OCY's brief at 11.  OCY recognizes that Mother made progress from April 2018 through February 2019, but then reports that Mother "completely destabilized" at that time.  ***Id.***

> She lost her housing and stopped visiting with … Child on a consistent basis from March 2019 through July 2019.  Mother's inability to attend visits with … Child consistently demonstrates her inability to be the stable, available caregiver that … Child needs.  Mother obtained new housing and changed employment several times, but was just in the beginning stages of potentially regaining stability at the time of the hearing.

***Id.***  Mother also stopped attending mental health and drug and alcohol treatment in February of 2019.  Additionally, OCY states:

> Mother has not been able to meet … Child's needs for stability, security, and permanency.  Mother's incapacity to care for … Child will not be remedied within a reasonable amount of time.  Mother has already had two years while … Child has been living in foster care to demonstrate her ability to resolve her incapacities.  Mother has either been unable or unwilling to maintain consistent contact with … Child, consistently attend mental health and drug and alcohol treatment or achieve the stability needed to meet all of the needs of … Child.  Any additional length of time that … Child would be forced to remain in foster care and wait still longer for Mother to remedy her incapacities is not a reasonable amount of time.  … Child's need for permanency is urgent….

***Id.*** at 12-13.  Finally, OCY notes that although it has attempted during the two years of Child's placement "to assist Mother in resuming parental responsibility, those efforts failed and … Child cannot be made to wait still longer while Mother continues to work on her goals." ***Id.*** at 13.

Mother attempts to deflect the blame from herself for her failure to comply with her FSP goals.  She points out that there was a no contact order

- 11 -

in place at the time she was released from prison and claims that no reunification efforts were put in place by the court until June of 2018, so she could not "even attempt to be in compliance" until then. Mother's brief at 16. This does not excuse her failure, however, to maintain regular visits with Child and to meet her FSP goals going forward. As counsel for Child stated:

> After a slow start[] due to her incarceration, Mother began to progress with her goals. However, Mother then sabotaged herself by having several domestic incidents with her paramour, one of which resulted in a PFA being filed against her. From that time on, Mother became inconsistent with visits, lost her stable housing, and stopped attending mental health and drug and alcohol treatment. Mother even failed to attend court hearings, including the protection from abuse hearing.

Child's brief at 16-17 (unnecessary capitalization omitted). We deem the trial court's determination under section 2511(a)(2) to be well-supported by the record, and we discern no abuse of discretion.

As for the trial court's analysis under section 2511(b), Mother argues that the court erred in failing to consider the strong bond between her and Child. In support of her claim, Mother avers that she and Child bonded at birth and while at the hospital, "as evidenced by the fact that [M]other was the only person [C]hild would take the bottle from as an infant." Mother's brief at 22. She states that "the bond grew stronger and stronger" the more Child saw her and that Child trusts her for her care. *Id.* While we recognize that a bond does appear to exist between Mother and Child, *see* N.T., 8/14/19, at 265 (trial court's stating "the testimony has established that with respect to the birth [M]other, there is clearly affection and a bond between

[Mother] and the [C]hild"), Mother's assertions do not outweigh the trial court's well thought-out determination that termination of her parental rights best serves the needs and welfare of Child and will not irreparably harm her.

We deem the trial court's reasoning for its decision to terminate Mother's parental rights pursuant to section 2511(b) to be fully supported by the record. Moreover, we note the following testimony of Ms. Hofer, Child's court-appointed attorney, when asked about her observation of Child in her foster home:

> MS. HOFER: She is very happy. She appears very happy in her home. She gets along very well with her foster mother and her foster brother. She seems very happy there.
>
> The children are bonded well together. They play well together.
>
> The foster mom seems very attentive to her needs. She just seems—you can tell it's a loving, stable home. I was glad to see her there.

N.T., 8/14/19, at 270. Ms. Hofer added that, given Child's age, "the presumption would be she would want to stay with a loving and stable environment where her needs are met, and I believe that's where she is." *Id.* at 271. The foster mother "attends to … [C]hild's physical needs as she receives intensive medical care, treatment, and evaluation." Child's brief at 26-27. Child has bonded with the foster mother and "is thriving with her[,] … [and] she looks to her for support and security." *Id.* at 27. The foster mother

"is ready, willing, and able to parent [C]hild, and she wants to have … Child be a permanent part of the family." ***Id.***

> OCY also concurs in the trial court's determination:
>
> Mother has missed numerous visits since February 2019 and has not been a stable, consistent caregiver for … Child. … Child has been placed in a loving foster home and has developed a secure, loving bond with her foster mother over the last two years. … Child has made substantial progress in her development since being placed in the foster home. Consequently, the trial court properly concluded Child's needs would best be met by termination of Mother's parental rights.

OCY's brief at 19. We ascertain no abuse of discretion or error of law by the trial court.

Accordingly, we affirm the decree terminating Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(2) and (b).

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>4/15/20</u>